## 9601

BYRD *ET AL.* v. O'NEAL *ET AL.*

(91 S. E. 293.)

1. REFORMATION OF INSTRUMENTS—MISTAKE—SUFFICIENCY OF EVIDENCE. —In an action by heirs of a grantee against the heirs of a grantor to reform a deed to conform to the intention of the parties, evidence *held* to show proof of a mutual mistake in omitting the word "heirs" in the habendum.

2. REFORMATION OF INSTRUMENTS—"LACHES."—In such action, where there was no evidence that the defect was discovered until after the sale in a partition suit by grantee's heirs, and where their action for the reformation of the deed on that ground was brought with all convenient speed, it was not barred by "laches," which connotes not only undue lapse of time, but also negligence and opportunity to have acted sooner.

Before SPAIN, J., Darlington, December, 1915.   Reversed.

Action by Harriet Ford Byrd and others against George O'Neal and others. From a judgment reversing the findings of master in favor of the plaintiffs, and dismissing the complaint, plaintiffs appeal.

*Messrs. Miller & Lawson,* for appellants, cite:  *As to laches:* 94 S. C. 361; 43 S. C. 436; 5 Pom. Eq. Juris. 33; 34 Cyc. 964; 35 U. S. L. Ed. 1063; 85 Fed. 517; 71 Fed. 618; 91 Fed. 191; 58 Fed. 297; 105 Am. St. Rep. 400; 101 Am. St. Rep. 38; 65 Am. St. Rep. 504;

---

FOOTNOTE.—As to reformation of instruments, see *Cook* v. *Knight,* *ante,* 106 S. C. —, 91 S. E. 312.

25 U. S. L. Ed. 52. *Estoppel:* 93 S. C. 397; 48 L. R. A. (N. S.) 759. *Construction of contract:* 37 S. C. 309; 98 S. C. 239; 8 R. C. L. 1057. *Warranty:* 35 S. C. 531, 536; 16 Cyc. 718; 19 S. C. 9. *Specific performance of executory contract:* 34 S. C. Eq. (13 Rich. Eq.) 42; 85 S. C. 475; 94 S. C. 358. *Findings of master not excepted to:* 13 S. C. 410; 43 S. C. 103; 45 S. C. 262; 56 S. C. 215; 1 Elliott Ev., sec. 145; 44 S. C. 32. *Reformation of deeds:* 34 S. C. Eq. 42; 44 S. C. 22; 84 S. C. 426; 92 S. C. 305; 85 S. C. 472; 98 S. C. 234.

*Mr. James R. Coggeshall,* also for appellants, cites: *As to construction of contract:* 85 S. C. 475; 98 S. C. 238; 34 S. C. Eq. 42; 92 S. C. 307. *Laches:* 27 S. C. Eq. 96; 52 S. C. 345; 59 S. E. 762; 18 A. & E. Enc. of L. (2d ed.) 125; 69 S. E. 724; 5 Pom. Eq. Juris. 33; 44 S. C. 27. *Executory contract to convey fee:* 8 R. C. L. 1058; 6 L. R. A. 663; 110 Ala. 431; 18 So. 13; 83 S. C. 444; 37 S. C. 312.

*Messrs. W. P. Pollock* and *E. C. Dennis,* for respondents. *Mr. Pollock* cites: *As to mistake:* 44 S. C. 22; 85 S. C. 472; 84 S. E. 532; 78 S. E. 17; 92 S. C. 305. *Effect of delay:* 45 S. C. 164. *Laches:* 43 S. C. 436; 39 S. E. 950; 42 S. E. 106.

February 10, 1917.

The opinion of the Court was delivered by Mr. Justice Fraser.

In 1859, Evander Byrd, Jr., married a daughter of Griffin O'Nails. Mr. Byrd and his wife lived for a time with Mr. O'Nails. In 1860, Mr. O'Nails bought a tract of land near him and sold a part to his son-in-law, Byrd. Byrd moved on the land, built houses, cleared it up, and planted it to the time of his death in 1914. Before he died, Mr.

Byrd made his will disposing of the land, but only two witnesses signed as witnesses and the will failed. The heirs of Mr. Byrd brought suit for partition and one tract was ordered to be sold. When the title was examined, it was found that the deed did not convey a fee. This action was then brought by the heirs of Mr. Byrd against the heirs of Griffin O'Nails to reform the deed to conform to the intention of the parties. The trouble in the deed is in the habendum. The word "heirs" is not used. The warranty is to the grantee and his heirs, and against the grantor, his heirs and assigns, and all other persons lawfully claiming and to claim the same or any part thereof. The case was referred to a special referee, who found both law and facts in favor of the plaintiffs. From this finding the defendants appealed. The appeal was heard in the Court of Common Pleas, and the findings of the master were reversed and the complaint dismissed. From this judgment the plaintiffs have brought this appeal.

There are fourteen exceptions, but only two questions, to wit: (1) Is there sufficient proof of mutual mistake? (2) Are the plaintiffs barred by laches?

1. There is abundant proof of mutual mistake. The habendum is inartificial and complicated with extraneous matter. It reads as follows:

"To have and to hold all and singular the premises before mentioned, except the reservations of wood, lightwood, timber and right of way to Mrs. Lovedy Griggs for life contained and set forth in the will of John H. Griggs aforesaid, and subject also to any and all claims and no more which may have been upon the same in the hands of said John H. Griggs, all the right which he had therein with the exception above in his will."

Mr. O'Nails had recently bought from the Griggs estate a larger tract of which the land hereby conveyed was a part.

It seems to this Court clear, from the habendum itself, that O'Nails intended to convey to Byrd just exactly the

estate he (O'Nails) had just bought from the estate of
Griggs, to wit, a fee. When that is followed by "I do
hereby warrant and forever defend unto the said Evander
Byrd, Junior, his heirs and assigns, against myself and my
heirs, and against all persons lawfully claiming the same
and any part thereof," the conclusion is irresistible that it
appears on the face of the deed that the grantor intended to
convey to the grantee the entire estate in the land conveyed,
subject only to the incumbrances that were on the land when
the grantor bought it. The word "heirs" being omitted
in the habendum, it is evident that the deed did not grant a
fee; but the intention to grant a fee is clear on the face of
the deed itself. When the surrounding circumstances are
taken into consideration, the conclusion is strengthened.

Mr. Byrd was a man of thrift, and, though uneducated,
was a good man of considerable force. One of the defend-
ants said of him:

"He was as smart a man as that country ever had. He
was well thought of, and a man that I liked. Him and me
served four years in the army, and he was as good a man
as ever lived."

It is hard to believe that a man, of whom one opposed
in interest would speak like that, would have been content
to spend his whole life and his extraordinary energy and
ability upon property which he expected to consume only
upon himself, and leave his wife and child or children to
come with no provision for their support. Nor is it proba-
ble that the grantor should have been so unmindful of the
interest of his daughter, the wife of the grantee, as to per-
mit this condition which would inure to his own benefit and
the undoing of his daughter and her children. If only a
life estate was intended, it is difficult to understand how it
is that no suspicion of the true condition was known in the
family of the grantor. They never suspected any rights
in this land until they were informed by the plaintiffs, after
their father's death. Neither the grantor nor the grantee

could read, and the deed was drawn by one not skilled in conveyancing.

There is evidence that impresses this Court that the grantor had a previous agreement with the grantee to sell him a part of the Griggs land, if he should buy it. This previous agreement is considered improbable by the Circuit Judge, for two reasons: (1) Because the witness is old; and (2) because it is not probable that there should have been an agreement to buy just 191 acres. The witness is old, but at the time of the transaction she was young and the wife of the grantee. It was a transaction which affected her future home. One of the well known signs of advancing age is that we forget the things of yesterday and remember with clearness the things of half a century ago. There are some little inaccuracies in her testimony that may have been slips of the tongue, but on the whole she is clear in her statements, remarkably so, as to recent events. There can be little doubt that Mrs. Byrd remembers those transactions. There is happily nothing to impeach her integrity. It is no more wonderful that the grantor should have agreed to buy 191 acres before the sale than afterwards.

It is said that the case of *Jones* v. *Kelly,* 94 S. C. 349, 78 S. E. 17, is exactly this case and conclusively supports the Circuit Judge. The cases are very different. In *Jones* v. *Kelly,* the habendum was to the grantee:

"Him to have and to hold from this day forward the above-named land against myself, and I, Charles McAllister, of the aforesaid county and State, do further bind myself to warrant and defend against my heirs, executors and administrators, and all other persons lawfully claiming the same or any part thereof."

In that case there was no hint as to the estate conveyed, nor a warranty to heirs.

There are many other things that might be said, but these are conclusive.

2. This suit is not barred by laches.  In *Brock* v. *Kirkpatrick,* 72 S. C. 503, 504, 52 S. E. 597, it is said, affirming *Babb* v. *Sullican,* 43 S. C. 436, 21 S. E. 277 : "Laches connotes not only undue lapse of time, but also negligence, and opportunity to have acted sooner; and all three factors must be satisfactorily shown before the bar in equity is complete."

The grantor and grantee made their marks.  They were unlearned.  There is not the slightest evidence that the defect was discovered until after the sale for partition, and this suit was brought "with all convenient speed."

The judgment is reversed, and the case remanded to the Court of Common Pleas for Darlington county for such administrative order as will secure to plaintiffs a proper deed to their land.