[No. 22787. Department One. February 26, 1931.]

C. M. WEATHERWAX, *Respondent*, v. H. C. JOHNSON, *as State Supervisor of Banking, Appellant.*[1]

*Eggerman & Rosling, Lund & Dodds,* and *Arthur G. Cohen,* for appellant.

*John C. Hogan,* for respondent.

MAIN, J.—This action was brought to recover the balance of a dividend from an insolvent bank. The defendant, the state supervisor of banking, in his answer admitted the allegations of the complaint, and pleaded an offset, in that the plaintiff was indebted,

[1]Reported in 296 Pac. 182.

on account of interest on deferred payments of the plaintiff's superadded stock liability, to an amount equal to the dividend not paid. The cause was tried to the court without a jury, and resulted in findings and conclusions sustaining the plaintiff's right to recover in the sum of $480.52, with interest. Judgment was entered against the defendant in the sum of $548.72, from which he appeals.

Hayes & Hayes, Bankers, Inc., located at Aberdeen, this state, became insolvent and was taken over by the state supervisor of banking, February 7, 1927. The capital stock of the bank, at the time, was three hundred thousand dollars, divided into three thousand shares of the par value of one hundred dollars each, of which the respondent owned four hundred thirty shares. At the time the bank was taken over, the respondent had on deposit to his credit therein, the sum of $12,475.80.

February 14, 1927, the appellant, as supervisor of banking, levied an assessment of one hundred per cent upon all capital stock of the bank, which assessment was payable immediately. The respondent was notified of the assessment upon the shares of stock held by him, and payment thereof was demanded. The amount of his assessment was forty-three thousand dollars.

At the time the assessment was made, the respondent was in San Francisco, California, and the assessment notice, which was dated February 14, 1927, was not received by him until three days later, or February 17. On the day following the receipt of the notice, he communicated with his attorney at Aberdeen, and requested the attorney to ascertain from appellant how many days he would have in which to make payment. The attorney communicated by telephone with appellant, and was told that respondent would have ninety days in which to pay the assessment. This informa-

tion was immediately communicated by wire to respondent. March 22, 1927, respondent paid ten thousand dollars on the assessment; April 11, ten thousand dollars; April 26, ten thousand dollars; and May 12, 1927, the balance, thirteen thousand dollars. The remittances were made from San Francisco.

Thereafter, a first dividend of thirty per cent was declared by appellant, and paid on all general claims, respondent receiving the full amount of this dividend. A second dividend of fifteen per cent was declared in December, 1927. This dividend, figured on respondent's claim, amounted to $1,871.37, but the respondent received only $1,390.85, leaving a balance of $480.52 owing by the liquidator. The action was brought, as above indicated, to recover this sum, and, as stated, the reason it was not paid was because the liquidator sought to offset against that amount the interest on the deferred payments on the respondent's superadded stock liability.

The first question to be determined is: Was the appellant entitled to collect interest from the date of the assessment to the time of payment on the respective payments made by the respondent?

Section 3242, Rem. Comp. Stat., which is one of the sections of the state banking law, in part provides that a stockholder's superadded liability in an insolvent bank

" . . . may be enforced by the examiner as soon after taking possession of any bank or trust company as in his judgment the same may be necessary."

The national bank act (U. S. Code, Title 12, § 192) contains a provision that the comptroller of the currency "may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders." In *Hanson v. Soderberg,* 105 Wash. 255, 177 Pac. 827, referring to the language of the two statutes,

it was held that they were in effect the same in meaning.

Under the national bank act, the comptroller of the currency administers the affairs of an insolvent national bank, and determines the liability, if any, of the stockholders; a receiver is appointed by that officer, who has charge of liquidating the bank. Construing the national bank act, the United States supreme court has held that interest on the stockholders' superadded liability runs from the date of the order of the comptroller of the currency making the assessment. In *Casey v. Galli,* 94 U. S. 673, it was said:

"It has become necessary, in order to pay the debts, to enforce the liability of the shareholders. The comptroller has decided that this shall be done. On the seventh day of June, 1875, by his order in writing, he required the plaintiff, as such receiver, to enforce such liability against each stockholder to the amount of the par value of his stock held at the time of the failure of the association. . . .

"The sum to be paid being liquidated, and due and payable when the comptroller's order was made, it follows that the amount bears interest from the date of the order. Otherwise there would be no motive to pay promptly, and no equality between those who should pay then and those who should pay at the end of a protracted litigation."

In *Bowden v. Johnson,* 107 U. S. 251, it was held that interest began to run from the date of a letter of the comptroller of the currency, addressed to the receiver, directing him to bring suit to enforce the liability of every person owning stock at the time the bank suspended. It was there said:

"The liability of the defendant bears interest from the date of said letter, Aug. 13, 1875. *Casey v. Galli,* 94 U. S. 673."

Applying the rule of those cases to the case now before us, the interest on respondent's assessment

should be figured from February 14, 1927, the date appellant made the assessment.

The next question is whether the respondent is relieved from paying interest, by reason of the fact that the appellant stated to respondent's attorney, as above set out, that respondent had ninety days in which to make the payment.

Section 7299, Rem. Comp. Stat., provides that every loan or "forbearance of money" shall bear interest at the rate of six per cent per annum, where no different rate is agreed to in writing between the parties. At the time respondent's attorney communicated with appellant, the interest on respondent's assessment had already begun to run, and deferring the time of payment did not operate to stop the running of the interest. The reason, if any, which appellant gave for extending the time ninety days, is not material. The forbearance of appellant to collect immediately, was equivalent to a delay in enforcing a right which he then had. Whether the appellant would have had the right to suspend the running of interest, had he sought to do so, presents a question not here involved, and upon which we express no opinion. It may be that, at the time he made the assessment, he could have fixed a future date at which all stockholders should pay, from which date interest would begin to run, but that was not done in this case. Respondent was liable for interest from the date of the assessment to the time of the respective payments.

The next question is whether interest should be figured up to the time the remittances were deposited in the mail at San Francisco, or up to the time they were received by appellant.

In *Masterson v. Union Bank & Trust Co.*, 86 Wash. 560, 150 Pac. 1126, it was said:

"A creditor has a right to payment in person, or through his duly authorized agent, and the debtor cannot select an agency for him, even though the agency selected be the United States mails or other public carrier. So here, contrary to the presumption that might arise in the sale of goods, the delivery in the mails of a package containing the money, addressed to the consignee, in the absence of some showing of an agreement or custom to that effect, does not raise a presumption that the carrier was the consignee's agent. The presumption is the other way; the money is presumed to belong to the sender until actually received by the person to whom it is sent. *Buell v. Chapin*, 99 Mass. 594, 97 Am. Dec. 58; *Dexter Horton National Bank of Seattle v. Hawkins*, 193 Fed. 363."

Under the holding in that case, the interest should be figured up to the time the payments were received by appellant.

There is a further contention that the $480.52 interest should be offset against the $12,475.80 which respondent had on deposit at the time the bank failed, and not against the dividend. When this action was brought, appellant was indebted to respondent in the sum of $480.52; respondent was indebted to appellant to the extent of the amount of interest due on his deferred payments on the stockholder's liability. The $480.52 interest item should be set off against the dividend, and not against the $12,475.80 which the respondent had on deposit in the bank at the time it failed.

The judgment will be reversed, and the cause remanded for further proceedings as herein indicated.

TOLMAN, C. J., MITCHELL, HOLCOMB, and PARKER, JJ., concur.